**(Mrs.) Lottie DENNISON et al., Appellants,**

**v.**

**(Mrs.) Addie ROBERTS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 29, 1968.

Rehearing Denied May 9, 1969.

Blakey Helm, Louisville, G. D. Milliken, Jr., Bowling Green, for appellants.

Edwin I. Baer, Louisville, for appellees.

OSBORNE, Judge.

The testatrix, Sarah G. Kelley, died on December 6, 1965, leaving an estate of around $60,000 and a will dated March 10, 1964. Mrs. Kelley was 85 years old when she died, and 84 when she made the will a year earlier. Her husband and children had all predeceased her. Her collateral kin consisted of three sisters and the issue of two deceased brothers and a deceased sister. She left $100 each to two of the sisters and $50 each to all of her nieces and nephews except for two. The residue, which was the bulk of the estate, was left to the third sister, Mrs. Addie Roberts, who is the primary appellee herein.

The heirs, other than Mrs. Roberts, attacked the will on the grounds of lack of

testamentary capacity and undue influence. The issue of lack of testamentary capacity was submitted to the jury who found in favor of the will. The appellants do not seriously argue that the verdict was against the evidence and we do not believe that it could be so found. However, they argue that the issue of undue influence should have been submitted to the jury. They also argue that they should have had a directed verdict because of the failure of the propounders of the will to file an answer to their complaint in circuit court.

Mrs. Kelley was in her eighties when the will in question was executed and several months thereafter was found incompetent. The contestants introduced much evidence to show that her mental condition was weak during the entire period in question. The appellees introduced contradictory evidence. Evidence of weak mental condition is relevant on the issue of undue influence. Creason v. Creason, Ky., 392 S.W.2d 69 (1965). There was also evidence to prove that the will represents an unnatural disposition of her property. Mrs. Addie Roberts, the chief beneficiary under the will, had been close to and had helped the testatrix for many years. However, in her declining years, Mrs. Kelley had also been close to and had called upon other relatives, especially another sister, Mrs. Katie Frierson. Mrs. Frierson came from Bowling Green to care for Mrs. Kelley on a fairly regular basis. There was also evidence that certain nieces and nephews had done a great deal for Mrs. Kelley. This is not an extremely blatant case of an unnatural disposition but there is some evidence of it. However, weak mental capacity and an unnatural disposition are not enough to warrant an instruction on undue influence. There must be some evidence either direct or circumstantial of the exercise of undue influence. Teegarden v. Webster, 304 Ky. 18, 199 S.W.2d 728 (1947). In this respect the appellants have failed. They do not contend in their brief that the principal beneficiary was aware of the terms of the will or had a part in its execution. They can point to no untoward conduct on her part. In fact, Mrs. Kelley was apparently very reticent about her will. No one was consulted or told of it, although there were many members of the family around Mrs. Kelley, often alone with her. They can point to no evidence that Mrs. Roberts even knew of the will. In fact, the only evidence of undue influence they point to is the conversation between Mrs. Kelley and her lawyer in preparing the will, but this evidence shows, if anything, a lack of awareness of the size of her estate. This could only go to lack of mental capacity, which has already been decided. There is no contention that Mrs. Roberts knew the attorney more than having been introduced to him by Mrs. Kelley once. And there is no evidence of any conspiracy between Mrs. Roberts and the attorney. There is simply no evidence of undue influence here or any evidence fom which such a conclusion could be drawn. Appellants point to Sutton v. Combs, Ky., 419 S.W.2d 775, as submitting the question of undue influence to the jury on the basis of unnatural disposition and weak mental capacity with no evidence of undue influence. However, in the Sutton case there was circumstantial evidence of undue influence. The principal beneficiary, a niece of the testatrix, had developed her closeness to her aunt only after the aunt's children died, had pampered and flattered her aunt, and the evidence surrounding the execution of the will could indicate that it was made after pressure from the beneficiary. In this case there is a lack of evidence. The trial court properly refused to submit the question to the jury.

The facts relative to the procedural question argued by appellants are quite simple. The appellants-contestants filed a pleading in the circuit court designated as "complaint for contest of will." The appellees filed no responsive pleading. At the close of their evidence the appellants moved for a directed verdict on the basis that no responsive pleading had been filed. The court overruled this motion.

Procedure in will cases is governed by KRS 394.140 et seq. Will contests in the circuit court such as the one here are provided for by KRS 394.240 which designates such as an appeal from the county court order admitting the will to probate. This statute does not set out the procedure to be followed on such an appeal.

Appellants argue that under CR 1 the Civil Rules would apply here and that therefore CR 7.01 requires a complaint and an answer. A will contest case is not an original proceeding in the circuit court but an appeal. Therefore, CR 72 dealing with appeals from inferior courts would be more applicable. This rule does not require any pleadings at all. Of course, a will contest differs from the ordinary appeal because there might be no pleadings in the county court other than the verified application required under KRS 394.145, while there would be complete pleadings in the usual case in an inferior court.

The idea that the regular rules for an original action in the circuit court should apply would seem logical under the circumstances. However, this idea has been rejected by this court many times. The rule is stated in Combs v. Wooton, Ky., 239 S. W.2d 981 (1951). In that case the appellant argued that appellee had admitted that the will was barred by the statute of limitations by failing to deny this contention by not filing subsequent pleadings. In rejecting that argument, this court said:

"It is plain from the foregoing quotations that this court has always treated procedural matters in connection with appeal with great liberality and that strict compliance with provisions of the Civil Code that deal with actions in the circuit court has not been required and any statement or petition filed by the person appealing from the order of the county court, or even a bare filing of a transcript of the proceeding in the circuit court, has been adjudged sufficient. In most of the cases above quoted, however, the appellant filed some statement setting forth the ground of his complaint concerning the action of the county court. This court having permitted the appellant broad latitude concerning the kind, type, and method of appeal which he might select, will not hold the appellee to the strict compliance with all technical procedure applicable in the ordinary case that originates in the circuit court."

This decision governs the question in point here. The appellants argue that Gates v. Gates' Ex'r., Ky., 281 S.W.2d 1 (1955), indicates that the regular rules of pleading apply in will contests under the Civil Rules. In that case the parties had voluntarily filed pleadings and the court discussed the rules in determining whether a summary judgment was proper. However, that case only determines what happens when pleadings are filed, it does not hold that pleadings are required.

Judgment affirmed.

All concur.